[Crim. No. 4067. In Bank.—January 12, 1937.]

THE PEOPLE, Respondent, v. PETRONILO PACREN, Appellant.

No appearance for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

WASTE, C. J.—An information was filed against this defendant charging him on the first count with the murder of Isabello Aquino, on the second count with the murder of Jose Aquino, and on the third count with assault upon Rodrigo Aquino with a deadly weapon with intent to commit murder. To each count defendant pleaded not guilty and also not guilty by reason of insanity. He was first tried on his plea of not guilty. On counts one and two of the information the jury returned a verdict of guilty of murder of the first degree, without recommendation. On count three the jury returned a verdict of guilty of assault with a deadly weapon with intent to commit murder. Defendant then went to trial on his insanity plea. The jury returned

a verdict finding that he was sane at the time of commission of the crimes charged. Defendant thereupon moved for a new trial; the motion was denied and judgment of conviction entered against him. The cause now comes automatically before this court on appeal under the provisions of section 1239 of the Penal Code. We have read the record. █ It contains abundant evidence in support of each of the verdicts and we have discovered no errors prejudicial to the defendant.

Defendant testified that he was a forty-year-old Filipino farm laborer who had been ten years in the United States. He and about ten countrymen belonged to a farming association or partnership of which one Evans was the "American boss" and Isabello Aquino the "Filipino boss" and keeper of the books and accounts. About May 25, 1936, a meeting of the partnership was held in the mess hall of the farming camp, Camp Nine on the Empire Tract in San Joaquin County. The partners met about a table, defendant being seated opposite the three Aquino brothers, and a discussion was had of partnership affairs, with particular reference to the disputed ownership of a sugar beet crop. This discussion culminated in the commission by defendant of the murders and assault. Defendant, speaking through an interpreter, gave in part the following version of the occurrence:

"Well, the meeting started; Isabello was the spokesman and he started to explain to us the conditions of the crops and the condition of the business in general. He insisted upon his original statement . . . that the sugar beets did belong to them, and . . . when I had a feeling he was not telling the truth my intention is to find the truth, and I was determined to find the truth, so it dawned upon me to use a scheme whereby I could extract the truth, get the truth from this man, so I thought of bluffing the whole crowd. I went up to my room and got my gun and I came back to the meeting and I addressed the body and I said: 'My brothers, I am here for the sake of harmony; I am here to seek justice, not only for myself but for the rest of the men,' and so once more I said, 'Tell me the truth;' once more I repeated the statement 'Tell me the truth,' and then something he said at this point, something was said about Johnnie, his conversation with Mr. Evans, our American boss. Then once more I asked Mr. Aquino to tell the truth

and I said, 'Johnnie went to Mr. Evans to find out the truth, and Mr. Evans said that we have nothing to do with the sugar beets, and you as our boss insist that the sugar beets are ours, and I am a little bit confused. Now, you tell me the truth, and if you do not tell me the truth, well surely I will shoot you.' At this point I heard what Mr. Evans said once, that 'if Mr. Aquino starts trouble in this camp I am going to fire him out,' and so in the light of that I told Mr. Aquino that if he is not careful he is going to lose his job, and so I demanded once more about the truth and Mr. Aquino maintained his original stand in the matter, and at that moment my vision was not clear; I was in a daze and so I did not even know I pulled the trigger. Then after I had fired the first shot I did not know what happened then; evidently I had pulled the trigger several times, but the whole thing was just a blur to me.''

On cross-examination defendant testified that he shot Isabello twice, Jose twice also, and Rodrigo twice; that afterward he went to his room in the bunkhouse and there reloaded his gun, a weapon with which he had practiced shooting the day before. Isabello and Jose were killed; Rodrigo wounded. There was further evidence, denied by defendant but supported by sheriff's and autopsy surgeon's reports, that after the shooting defendant procured a hatchet and struck it against the head of Isabello, injuring the skull. Several Filipinos, including some who were present at the partnership meeting, were called as witnesses by the prosecution and they corroborated defendant's testimony as to the manner in which the shooting occurred. As a whole the evidence abundantly supports the conclusions of the jury.

Upon the trial on defendant's insanity plea, three alienists and physicians, one of whom was a member of the medical staff of the Stockton State Hospital for the Insane, testified that they had examined defendant and, in their opinion, he was sane at the time of commission of the crimes. A fellow countryman called by defendant also gave his opinion that defendant ''was not crazy''. The only evidence supporting the plea of insanity is found in the testimony of another countryman called by defendant, who stated he believed defendant was ''crazy'' at the time of the shooting. Thus the record contains ample support for the jury's verdict that defendant was sane.

The judgment of conviction and order denying new trial are and each is affirmed.

Shenk, J., Seawell, J., Thompson, J., Curtis, J., Edmonds, J., and Langdon, J., concurred.